UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
HOI LUNG TING,

                     Plaintiff,

        - against -

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-1241 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Hoi Lung Ting ("Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Social Security Administration ("SSA") denying his claim for Disability Insurance Benefits ("DIB"). Before the Court are the parties' cross-motions for judgment on the pleadings. (*See* Pl.'s Mot. for J. on the Pleadings, Dkt. 7 (hereinafter "Dkt. 7"); *see also* Def.'s Mot. for J. on the Pleadings, Dkt. 9 (hereinafter "Dkt. 9").) Plaintiff seeks an order remanding this matter for further administrative proceedings, while the Commissioner of Social Security ("Commissioner") asks the Court to affirm the denial of Plaintiff's claim. For the reasons that follow, the Court grants Plaintiff's motion on the pleadings and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum and Order.

**BACKGROUND**[1]

**I.     Procedural History**

On April 29, 2021, Plaintiff filed an application for DIB, alleging disability beginning on December 1, 2019. (Administrative Transcript ("Tr."),[2] at 21.) On December 2, 2021, Plaintiff's application was initially denied (Tr. 114–16), and on February 7, 2022, Plaintiff's application was denied on reconsideration (Tr. 127–29). At Plaintiff's request, on November 29, 2022, Administrative Law Judge ("ALJ") Andrew Weiss held a hearing at which Plaintiff, his counsel, and a Vocational Expert ("VE") appeared. (Tr. 63, 134.) On December 12, 2022, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). (Tr. 29.) On February 2, 2023, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 5.) Plaintiff timely filed this action for judgment on the pleadings challenging Defendant's denial of Plaintiff's DIB application on February 16, 2023. (*See* Dkts. 1, 7.)[3]

---

[1] The Court presumes the parties' familiarity with the facts in this case, and therefore recites only the facts that are relevant to the parties' instant motions.

[2] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (*see* Dkt. 5), appearing in the lower right corner of each page, and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

[3] 42 U.S.C. § 1383(c)(3) provides that "[t]he final determination of the Commissioner of Social Security after a hearing . . . shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3). According to 42 U.S.C. § 405(g):

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to

2

## II.      Plaintiff's Work and Medical History

Plaintiff was born in 1964 and is a high school graduate. (Tr. 65–66.) Plaintiff worked as a train operator for the New York City Transit Authority ("NYCTA") for 25 years until December 1, 2019, when he became unable to work due to chronic pain in his back. (Tr. 66–70.) Prior to his departure from his job with NYCTA, Plaintiff sought chiropractic treatment for the pain he was experiencing. (Tr. 70.) This treatment helped a little, but the pain continued to progress and eventually became "pretty constant." (*Id.*) In 2021, Plaintiff also attempted to work as an office furniture installer, but had to resign after three weeks because he could not tolerate the pain.[4] (Tr. 68–69, 73–74.)

After his failed attempt at working as a furniture installer, Plaintiff continued seeking treatment for his back pain, including physical therapy, and underwent a series of MRIs that revealed a "stenosis condition" and a fracture in his lower back. (Tr. 71.) These MRIs included the following: (1) an MRI of Plaintiff's cervical spine, performed on November 8, 2021, that "revealed herniation at C6-C7, and bulging at C3-C4, C4-C5 and C5-C6" (Tr. 25, 308); (2) an MRI of Plaintiff's lumbar spine, performed on November 9, 2021, that revealed "bulging at L1-L2, L2-L3, L3-L4, L4-L5, and L5-S1[,]" as well as "a left foraminal annular fissure, facet arthropathy with rostro caudal facet subluxation resulting in lateral recess, and foraminal stenosis bilaterally" at L4-L5, and "a central annular fissure, facet arthropathy with left greater than right

---

the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on February 7, 2023, and that, because Plaintiff filed the instant action on February 16, 2023—11 days later—it is timely. (*See generally* Dkt. 1.)

[4] In September 2021, Plaintiff completed a Function Report stating, *inter alia*, that his medical conditions limited his ability to work by prohibiting him from standing, lifting, and bending over. (*See* Tr. 243.)

3

lateral recess, and foraminal stenosis" at L5-S1 (Tr. 25, 306); (3) an MRI of Plaintiff's thoracic spine, performed on May 3, 2022,[5] that revealed "multilevel discogenic spondylosis and bulging at T7-T8" (Tr. 26, 346–47); and (4) an MRI of Plaintiff's lumbar spine, performed on May 20, 2022, that revealed "an acute mild superior endplate compression fracture of the L2 vertebral body with adjacent marrow edema and enhancement; Grade I anterior spondylolisthesis of L4 on L5; bulging with left foraminal annular fissure at L4-L5; and bulging at Ll-L2, L2-L3, L3-L4 and L5-S1" (Tr. 25–26, 327–28). Upon receiving the MRI results, Plaintiff was instructed by his doctor to stop physical therapy and see an orthopedic surgeon. (Tr. 71.)

In June 2022, Plaintiff saw orthopedic surgeon Dr. Alfred Faust, who told Plaintiff to cease any activity for a few months. (Tr. 71, 319.) Dr. Faust's notes from that visit indicate that he was surprised by the "acute fracture" in Plaintiff's spine, as the MRI results facially "did NOT look at all pathologic." (Tr. 321.) Although Plaintiff considered surgery, it was not recommended due to the fracture in his back. (Tr. 71.)

Plaintiff saw Dr. Faust again on September 13, 2022. (Tr. 323.) Dr. Faust noted that Plaintiff was experiencing "lower back pain radiating down the lower extremities to the knee" (Tr. 26, 323–26), that the pain was "constant" and worsened with activity (Tr. 323), and that nothing assisted in relieving the pain (*id.*). Dr. Faust also noted that while he expected the fracture in Plaintiff's lower back to heal and thereby relieve some pain, if the pain persisted, Plaintiff would need to repeat his MRIs. (Tr. 325.) An MRI of Plaintiff's right hip performed on September 27, 2022 revealed "mild degenerative changes bilateral hips, including chondral thinning and osteophytosis[,]" as well as "a sub centimeter subcortical cystic foci bilateral anterior femoral neck

---

[5] The ALJ's decision incorrectly states that this MRI was performed on May 23, 2022 (*see id.* at 26); however, Plaintiff's medical records indicate that it was performed on May 3, 2022 (*see id.* at 346–47).

regions, possibly degenerative in nature as well; and bilateral hamstring origin tendinopathy." (Tr. 26, 329).

On November 10, 2022, Dr. Faust completed a Medical Source Statement, in which he opined that Plaintiff's conditions permitted occasional lifting of less than 10 pounds for a maximum of 1/3 of an eight-hour work day; sitting, walking, and standing for less than 30 minutes; occasional use of hands for fine and gross motor activities; and less than occasional reaching in all directions. (Tr. 361–62.)[6]

### III.  November 29, 2022 ALJ Hearing

On November 29, 2022, Plaintiff appeared at a telephonic hearing with his counsel, Charles Weiser, before ALJ Weiss. (Tr. 63.) ALJ Weiss heard testimony from Plaintiff and VE Michael Boland. (*Id.*)

#### A.  Plaintiff's Testimony

Plaintiff testified that he could walk "maybe 10, 15 minutes" before needing to stop because of back stiffness and the need to rest. (Tr. 71–72.) Plaintiff further testified that walking "onset[] the other pain in [his] back or the sciatica in [his] back. [The pain] goes down [his] leg and everything else." (Tr. 72.) When asked by the ALJ if he could lift 20 pounds "once in a while," Plaintiff said no. (*Id.*) Plaintiff reported that he could occasionally lift around 10 pounds, but had pain in his shoulder from lifting and could "do nothing" due to his back pain. (*Id.*) Plaintiff's counsel noted that the medical records demonstrate that Plaintiff "has a disc protrusion at C3-C4 followed by S4-S5, S5-S6, disc herniation at C6-C7 and multi-level stenosis throughout

---

[6] Notably, while Dr. Faust's November 10, 2022 Medical Source Statement indicates that Plaintiff received his first treatment from Dr. Faust on June 2, 2022, and that his last treatment prior to the report being filled out was on September 13, 2022, it also lists the frequency of Plaintiff's visits as "monthly." (Tr. 361.)

5

the cervical spine[,]" and that an "MRI of the lumbar spine . . . shows disc bulges at L1-L2, L2-L3, L3-L4, L4-L5, L5-S1." (Tr. 81–82.)

### B. Testimony of Vocational Expert

The VE testified that Plaintiff's past occupation with the NYCTA is classified as a Motor Operator in the Dictionary of Occupational Titles ("DOT"). (Tr. 74.) The VE explained that this is a "light"[7] occupation as generally performed, but a "medium" occupation as actually performed by Plaintiff. (Tr. 74–75.) In other words, because Plaintiff reported occasionally needing to lift up to 50 pounds[8] in the course of carrying out his work, his actual performance of the job would not be classified as light, but as medium. (Tr. 75.)

Plaintiff's counsel asked the VE a series of questions regarding when the DOT last updated the Motor Operator title. (Tr. 77–78.) The VE confirmed that the DOT classification of a Motor Operator's work as light had been determined in the 1980s, and explained that he could not comment on how much weight a Motor Operator today actually has to lift. (*Id.*) Nonetheless, it was still the VE's opinion that a Motor Operator's work, as generally performed, is light work, based solely on the data from the DOT, and "not based on any of [his] education or experience as [he had] not seen that specific occupation performed and where [Plaintiff] worked." (Tr. 78.)

---

[7] "Light work is the category just below medium work, and means that a person can lift no more than 20 pounds occasionally and frequently lift and carry objects up to 10 pounds, as well as walk and stand up to six hours a day." *Vrlaku v. Saul*, No. 20-CV-01011 (AMD), 2021 WL 848848, at *4 n.1 (E.D.N.Y. Mar. 5, 2021).

[8] Plaintiff indicated in a Work History Report that his position required him to lift a maximum of 50 pounds and frequently lift 10 pounds. (Tr. 295.) The report also states that throughout a work day, Plaintiff was required to climb onto trains, walk around trains, walk up and down stairs, walk on elevated structures, apply hand breaks, and remove "barrier springs between [train] cars." (Tr. 295.)

The ALJ asked the VE whether the job of a Motor Operator would be transferable to any other job performed at a light or sedentary level. (Tr. 79.) The VE responded that there was only one other occupation listed in the DOT within the same industry that is performed at the light exertional level, titled Streetcar Operator, with an estimated full-time employment number of 3,745. (Tr. 79–80.) The VE further explained that a Streetcar Operator's work is similar to that of a Motor Operator except that the trains most likely operate above ground. (Tr. 81.) When pressed by Plaintiff's attorney, the VE admitted that he had only seen the job of Streetcar Operator being performed on the West Coast, specifically in San Francisco, and could not attest to whether the job existed on the East Coast. (*Id.*)

The ALJ asked the VE to consider the following hypothetical:

> Assume a hypothetical individual the same age, same education as the claimant could perform the full range of light work. Could sit, stand and walk for 6 hours in an eight-hour day and lift 20 pounds occasionally, 10 pounds frequently. Could he perform his prior work? Could he perform the claimant's prior work?

(Tr. 82.) The VE responded that the hypothetical person would not be able to perform his past work as actually performed, but only "[a]s generally performed according to the DOT[.]" (Tr. 82–83.)

The ALJ then asked the VE to consider a second hypothetical: "[A]ssume the claimant will be limited to only [the] full range of sedentary work. Could he perform his prior work as generally or actually performed?" (Tr. 83.) The VE responded that this hypothetical person would be unable to perform his or her past work, either generally or actually. (*Id.*)

## IV. ALJ Decision

On December 12, 2022, the ALJ issued a decision finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act and denying Plaintiff's request for DIB. (Tr. 29.)

7

ALJs must engage in a five-step inquiry when evaluating disability claims. The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted). First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If the answer is yes, the plaintiff is not disabled. *Id.* If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment. *Id.* § 416.920(a)(4)(ii). An impairment is severe when it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." *Id.* § 416.922(a). If the plaintiff does not suffer from an impairment or combination of impairments that is severe, then the plaintiff is not disabled. *Id.* § 416.920(a)(4)(ii).

If the plaintiff does suffer from an impairment or combination of impairments that is severe, the ALJ then proceeds to the third step and considers whether the impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* § 416.920(a)(4)(iii). If the ALJ determines that the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act. *Id.* § 404.1520(a)(4)(iii). On the other hand, if the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC")[9] before continuing to steps four and five. To determine the plaintiff's RFC, the ALJ must consider the plaintiff's

---

[9] A claimant's RFC is "the most [he or she] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1); *see also* Social Security Ruling 96-9P, 1996 WL 374185 (July 2, 1996) ("RFC is what an individual can still do despite his or her functional limitations and restrictions caused by his or her medically determinable physical or mental impairments. It is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to perform work-related physical and mental activities.").

"impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 416.945(a)(1).

The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* § 416.920(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given his or her RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 416.920(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.*

Here, at step one, the ALJ found that Plaintiff met the insured status requirements of the Act and had not engaged in substantial gainful activity since December 1, 2019, the alleged onset date. (Tr. 23.) Although Plaintiff had worked after the alleged onset date as an office furniture installer, the ALJ found that this was an unsuccessful work attempt as Plaintiff could not sustain the effort. (Tr. 23–24.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and cervical spine, and arthritis of the right hip and right shoulder. (Tr. 24.)

At step three, the ALJ determined that Plaintiff's impairments, individually or in combination, did not medically equal the severity of any of the impairments in the Listings. (Tr. 24–25.) Specifically, regarding Plaintiff's joint abnormalities and spine disorders, the ALJ found that Plaintiff had not met the requisite conditions of the Listings because he did not establish that he had:

> (a) a documented medical need for a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device involving the use of both hands; or (b) an inability to use *one* upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, *and* a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the

9

>   use of one hand; or (c) an inability to use *both* upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

(Tr. 24.)

The ALJ accordingly proceeded to step four and concluded that Plaintiff had the RFC to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b). (Tr. 25.) In reaching this conclusion, the ALJ relied on the following medical records: (1) the November 8, 2021 MRI of Plaintiff's cervical spine (Tr. 25, 308); (2) the November 9, 2021 MRI of Plaintiff's lumbar spine (Tr. 25, 306); (3) the May 3, 2022[10] MRI of Plaintiff's thoracic spine (Tr. 26, 346–47); (4) the May 20, 2022 MRI of Plaintiff's lumbar spine (Tr. 25–26, 327–28); (5) the September 27, 2022 MRI of Plaintiff's right hip (Tr. 26, 329); (6) records from Dr. Faust from September 13, 2022 (Tr. 26, 323–26); and (7) records from Chirocare Chiropractic documenting Plaintiff's chiropractic manipulation and physical therapy (Tr. 26, 312–18).

Based on the foregoing records, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (Tr. 26.) However, according to the ALJ, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*) In other words, the ALJ found that the objective medical evidence "[did] not illustrate symptoms and limitations so debilitating" that "all substantial gainful activity is precluded" (*id.*), in contrast to Plaintiff's testimony at the hearing (*see* Tr. 72). In reaching this conclusion, the ALJ relied on the following medical records: (1) an EMG nerve conduction study of Plaintiff's upper extremities performed on October 28, 2021 that revealed normal results (Tr.

---

[10] *See supra* footnote 5.

10

26, 330–33); (2) an EMG nerve conduction study of Plaintiff's lower extremities performed on November 11, 2021 that revealed normal results (Tr. 26, 336–39); and (3) an EMG nerve conduction study of Plaintiff's lumbar spine performed on June 23, 2022 that revealed normal results (Tr. 26, 354–57). The ALJ also relied upon medical opinions of various doctors and physicians, including a report dated November 8, 2021 by Dr. Syeda Asad, a consultative examiner, that stated:

> The claimant appears to be in no acute distress. Gait normal. [He] uses no assistive device. [He] can walk on heels and toes without difficulty. Squat full. Stance is normal. [He] needs no help changing for exam. [He] needs no help getting on and off exam table. [He was] able to rise from chair without difficulty.

(Tr. 26 (alterations in the original); *see also id.* at 300.) The ALJ also summarized Dr. Asad's findings that the "lumbar spine showed tenderness, spasm, and limited range of motion," that Plaintiff's "right shoulder showed some limited range of motion," and that Plaintiff's "[s]trength and sensation were intact." (Tr. 26.) Dr. Asad's report concluded that Plaintiff had "moderate limitations for squatting, kneeling, bending, walking, and standing for a long period of time," as well as "moderate limitations for lifting, carrying, pushing, and pulling heavy objects." (Tr. 27 (internal quotation marks and citation omitted); *see also id.* at 301.)

The ALJ also considered Dr. Faust's November 10, 2022 Medical Source Statement, in which Dr. Faust opined that Plaintiff could lift and carry less than 10 pounds; could sit, stand, and walk for less than 30 minutes; and could use his hands occasionally for fine and gross manipulation, and less than occasionally for reaching. (Tr. 27, 361–62.) Lastly, the ALJ referred to two Disability Determination Explanations from reviewing state agency physicians, Dr. W. Wells and Dr. S. Tayab. (Tr. 27.) Dr. Wells's report, dated December 1, 2021, affirmatively answered specifically prompted questions regarding Plaintiff's RFC, indicating that Plaintiff could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally, and that he could sit,

11

stand, and walk for up to 6 hours total in an eight-hour workday. (Tr. 27, 92–93.) Dr. Wells also answered in the affirmative that Plaintiff could push and pull as much as he could lift and carry. (Tr. 27, 93.) Dr. Tayab's report, dated February 24, 2022, echoed Dr. Wells's opinion. (Tr. 27, 98–108.)

The ALJ then considered the persuasiveness of each of the aforementioned medical opinions. (Tr. 26–27.) He found Dr. Asad's opinion to be "somewhat persuasive, as it is based upon a complete physical, albeit one time, examination." (Tr. 27.) Nonetheless, the ALJ found that Dr. Asad's "conclusions [were] somewhat vague." (*Id.*) Dr. Faust's November 10, 2022 opinion was deemed "not persuasive, as the objective medical evidence [did] not support such extreme limitations." (*Id.*) The ALJ elaborated that "the claimant's negative EMG studies do not support an inability to grip, grasp, finger, or feel on an occasional basis." (*Id.*) Moreover, because Plaintiff "does not require an assistive device to ambulate," the ALJ found that Dr. Faust's assessment that Plaintiff could not walk or stand for more than 30 minutes was unsupported by the record. (*Id.*) On the other hand, the ALJ found Dr. Wells's and Dr. Tayab's opinions "persuasive," because they were based on "thorough reviews of the evidence by doctors familiar with the agency's standards." (*Id.*) The ALJ further concluded that their opinions were "also consistent with and supported by the radiology reports, the EMG studies, and the treatment received." (*Id.*)

At step five, the ALJ concluded that Plaintiff was capable of performing his past work as a Motor Operator as it is *generally* performed. (*Id.*) Relying upon the VE's testimony, the ALJ concluded that Plaintiff could also perform other jobs that exist in the national economy, such as Streetcar Operator. (*Id.*)

12

## STANDARD OF REVIEW

Unsuccessful claimants for benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). "In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Agolli v. Comm'r of Soc. Sec.*, No. 20-CV-5369 (MKB), 2023 WL 6050096, at *3 (E.D.N.Y. Sept. 15, 2023) (quoting *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005)). "Courts review de novo whether the correct legal principles were applied and whether the legal conclusion made by the [ALJ] were based on those principles." *Coulter v. Comm'r of Soc. Sec.*, No. 22-CV-1149, 2023 WL 3346505, at *1 (S.D.N.Y. 2023); *see also Douglass v. Astrue*, 496 F. App'x 154 (2d Cir. 2012) ("Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." (internal quotation marks and citation omitted)).

"If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must 'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision.'" *Coulter*, 2023 WL 3346065, at *1 (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam)). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the court] to glean the rationale of an ALJ's decision[.]'" (citation omitted)). If there is substantial evidence in

13

the record to support the Commissioner's factual findings, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki*, 729 F.3d at 175–76. However, "[i]f . . . the Commissioner's decision is not supported by substantial evidence or is based on legal error, a court may set aside the Commissioner's decision." *Agolli*, 2023 WL 6050096, at *3.

## DISCUSSION

Plaintiff first argues that the ALJ relied upon insufficient evidence in coming to the conclusion that Plaintiff was capable of performing his past relevant work as a Motor Operator as generally performed, which the DOT entry from the 1980s classified as light work, and that the ALJ made "no effort to obtain the requisite vocational clarity." (Dkt. 7-1, at 8–9.) Second, Plaintiff argues that even if his past work could be classified as "light," the ALJ was not justified in finding that Plaintiff could meet the "exertional and postural demands of light work." (*Id.* at 10.) The Court disagrees with Plaintiff's first argument,[11] but ultimately agrees that the ALJ inappropriately relied on non-examining experts and cherry-picked medical evidence in making his RFC determination. Thus, the Court concludes that the ALJ's decision was not supported by substantial evidence.

---

[11] "[At] the fourth stage of the [SSA] inquiry, the claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." *Jasinski v. Barnhart,* 341 F.3d 182, 185 (2d Cir. 2003). "In determining whether a claimant can perform his or her past relevant work as generally performed, '[t]he inquiry . . . is not whether a claimant is able to perform the duties of her previous job, but whether the claimant is able to perform the duties associated with her previous 'type' of work.'" *Fiedler v. Colvin*, 54 F. Supp. 3d 205, 216 (E.D.N.Y. 2014) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). Here, the ALJ's finding that Plaintiff could perform his past relevant work as a Motor Operator as generally performed was sufficient to negate a finding of disability at step four. *See Fiedler*, 54 F. Supp. 3d at 217; *Grogg v. Comm'r of Soc. Sec.*, No. 11–CV–1381 (NAM) (TWD), 2014 WL 1312325, at *13 (N.D.N.Y. Mar. 31, 2014). Therefore, it is not necessary for the Court to determine whether the ALJ erred in finding that the Plaintiff could perform his past relevant work as actually performed. *See Fiedler*, 54 F. Supp. 3d at 217.

## I. Inappropriate Reliance on Non-Examining Experts and Consultative Examiners[12]

While an ALJ is permitted to take into consideration the opinion of a non-examining source in determining a claimant's RFC, regulations promulgated by the SSA caution that "because nonexamining sources have no examining or treating relationship with [the claimant], the weight [given to] their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(c)(3). "Because a treating source examines a claimant directly, they 'may have a better understanding of [a claimant's] impairment(s) . . . than if the medical source only reviews evidence in [a claimant's] folder." *Soto v. Comm'r of Soc. Sec.*, No. 19-CV-4631 (PKC), 2020 WL 5820566, at *4 (E.D.N.Y. Sept. 30, 2020) (quoting 20 C.F.R. § 404.1520(c)(3)(v)). Thus, courts ordinarily find that "RFC determinations that depend entirely on the opinions of non-examining experts and one-time consultative examiners are not supported by substantial evidence." *Lewis v. Saul*, No. 21-CV-1493 (AMD), 2022 WL 4586241, at *9 (E.D.N.Y. Sept. 29, 2022); *see also Avila v. Comm'r of Soc. Sec.*, No. 20-CV-1360, 2021 WL 3774317, at *20 ("Even where a non-examining opinion is properly afforded some weight, it, alone, cannot be considered substantial evidence."); *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir.

---

[12] In January 2017, the SSA promulgated new regulations regarding the consideration of medical opinion evidence that apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Plaintiff's application for benefits was filed after that date (Tr. 21), the new regulations apply here. The previous regulations required "an ALJ . . . to give controlling weight to a treating physician if those opinions were 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and [were] not inconsistent with the other substantial evidence in [the] case record.'" *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (citations omitted), *report and recommendation adopted*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022). Under the new regulations, "[a] survey of . . . cases . . . show[s] that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar." *Id.* (collecting cases); *see also Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021) ("The new regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner.").

15

2019) ("We have frequently 'cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination.'" (citation omitted)).

Here, the ALJ relied primarily on the opinions of the two non-examining state agency physicians, Dr. Wells and Dr. Tayab, and partially on the opinion of consultative examiner Dr. Asad, while giving little weight to the opinion of Plaintiff's only treating source, Dr. Faust. (*See* Tr. 26–27 (ALJ finding Dr. Wells' and Dr. Tayab's opinions "persuasive" and Dr. Asad's opinion "somewhat persuasive," and deeming Dr. Faust's November 10, 2022 opinion "not persuasive").) Dr. Asad's "somewhat persuasive" opinion (*see id.* at 27), however, does not reflect a review of Plaintiff's important medical records, such as his MRIs. (*See* Tr. 299–302.) Instead, it appears to rely solely on Plaintiff's self-reported medical history at the examination. (*Id.*) Furthermore, neither Dr. Wells nor Dr. Tayab, whose opinions the ALJ relied on (*id.* at 27), examined Plaintiff. (*See* Tr. 86–96, 98–108.)

The Court finds that the ALJ's reliance on the single examination done by Dr. Asad and the non-examining reports of Dr. Wells and Dr. Tayab do not constitute substantial evidence in this case, especially given the contrary opinion of Plaintiff's only treating source, Dr. Faust. *See Garcia v. Comm'r of Soc. Sec.*, No. 22-CV-2449 (FB), 2023 WL 4904751, at *3 (E.D.N.Y. Aug. 1, 2023) ("Courts have consistently decided that when consultative physicians fail to read a claimant's MRI results prior to formulating a medical opinion, their opinion cannot constitute substantial evidence." (quoting *Fintz v. Kijakazi*, No. 22-CV-00337 (KAM), 2023 WL 2974132, at *4 (E.D.N.Y. Apr. 15, 2023)); *Jesse M. v. Comm'r of Soc. Sec.*, No. 1:22-CV-06044 (GRJ), 2023 WL 5013302, at *11 (S.D.N.Y. Aug. 7, 2023) ("The Second Circuit has long cautioned that 'ALJs should not rely heavily on the findings of consultative physicians after a single examination.'" (citations omitted)). Here, the opinions of the non-examining physicians do not

16

constitute substantial evidence on their own, and as such, should not have been heavily relied upon by the ALJ. *See Fintz*, 2023 WL 2974132, at *6 ("Without the support of an opinion by an expert who actually examined Plaintiff, however, the non-examining doctors' opinions cannot constitute substantial evidence." (citing *Avila*, 2021 WL 3774317, at *20)).

As noted, this error was compounded by the ALJ's dismissal of the only non-consultative treating source opinion in the record, Dr. Faust, who examined Plaintiff at least twice,[13] once on June 2, 2022, and again on September 13, 2022. (Tr. 319–21, 323–25, 361–62.) Dr. Faust's notes from Plaintiff's June 2, 2022 visit demonstrate that Dr. Faust was surprised by the "acute fracture" in Plaintiff's spine, as the MRI results facially "did NOT look at all pathologic." (Tr. 321.) Dr. Faust also noted that while he expected the fracture in Plaintiff's lower back to heal and thereby relieve some pain, if the pain persisted, Plaintiff would need to repeat his MRIs. (Tr. 325.) Importantly, in his November 10, 2022 Medical Source Statement, Dr. Faust opined that Plaintiff's conditions permit occasional and frequent lifting of less than 10 pounds; sitting, walking, and standing for less than 30 minutes; occasional use of hands for fine and gross motor activities, and less than occasional reaching in all directions. (Tr. 361–62.) Nevertheless, the ALJ found Dr. Faust's opinion unpersuasive (Tr. 27), despite it being corroborated by Plaintiff's MRI records and Plaintiff's testimony,[14] and despite Dr. Faust being the only non-consultative treating doctor and

---

[13] As previously noted, Dr. Faust's November 10, 2022 Medical Source Statement indicates that Plaintiff received his first treatment from Dr. Faust on June 2, 2022 and his last treatment on September 13, 2022, but also lists the frequency of Plaintiff's visits as "monthly." (Tr. 361.)

[14] While an ALJ is not "required to credit [a plaintiff's] testimony about the severity of [his] pain and the functional limitations it cause[s]," *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order), the ALJ does not have unbounded discretion in choosing to reject it; instead, the ALJ must determine whether a Plaintiff's statements as to his pain and limitations are consistent with the objective medical evidence, *see Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010) ("The issue is . . . whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of [his] pain are consistent with the objective medical and other evidence." (citations omitted)). Here, the physical limitations that Plaintiff testified to

specialist to evaluate Plaintiff. This assessment of Dr. Faust's opinion was not supported by substantial evidence. *See* 20 C.F.R. § 404.1520c ("The . . . opinion . . . of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the . . . opinion . . . of a medical source who is not a specialist in the relevant area of specialty."); *see also Mark V. v. Comm'r of Soc. Sec.*, No. 21-CV-10123 (GRJ), 2023 WL 2662678, at *6 (S.D.N.Y. Mar. 27, 2023) (finding that the ALJ's rendering of the treating orthopedic surgeon's opinion as somewhat persuasive "was not supported by substantial evidence or consistent with applicable law" where the ALJ relied upon the opinions of state agency review physicians who did not examine the claimant and were not specialists in the claimant's disability).

In sum, the ALJ's assessment of the treating specialist's opinion and reliance upon the non-examining state agency physicians' opinions were not supported by substantial evidence in this case.

## II.   The ALJ Cherry-Picked Evidence to Determine Plaintiff's RFC

By primarily relying on Dr. Wells' and Dr. Tayab's opinions and disregarding Dr. Faust's opinion, the ALJ also impermissibly "cherry-picked" medical evidence to support his conclusion regarding Plaintiff's RFC. "Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022); *see also Jones v. Saul*, No. 19-CV-5542 (BM), 2020 WL 5775525, at *12 (S.D.N.Y. Sept. 11, 2020) ("[A]n ALJ may not 'cherry-pick' medical opinions, or selectively cite

---

are consistent with the medical and other evidence regarding his condition. *See Nusraty v. Colvin*, 213 F. Supp. 3d 425, 442 (E.D.N.Y. 2016) ("[A] claimant need not be an invalid to be found disabled.").

treating notes or diagnostic imaging that support the ALJ's own view while ignoring opinions and evidence that do not."), *report and recommendation adopted*, 2020 WL 5775195 (Sept. 28, 2020); *Portland G. v. Comm'r of Soc. Sec.*, No. 20-CV-01035 (EAW), 2023 WL 1097459, at *6 (W.D.N.Y. Jan. 30, 2023) (remanding where the ALJ provided unavailing reasons to justify ignoring the most restrictive conclusions regarding the claimant's limitations, thereby impermissibly cherry-picking the least restrictive conclusions to justify the claimant's RFC); *Hahn v. Saul*, No. 20-CV-06124 (KAM), 2023 WL 4975970, at *7 (E.D.N.Y. Aug. 3, 2023) (remanding where the ALJ cherry-picked findings from one physician's consultative examination despite contradictory findings from several other medical sources).

The ALJ reasoned that because Plaintiff "does not require an assistive device to ambulate," Dr. Faust's opinion that Plaintiff is unable to stand or walk for more than 30 minutes is unsupported. (Tr. 27.) This reasoning ignores the MRI evidence of spinal disorders (Tr. 306–309), Plaintiff's testimony (*see* Tr. 71–72 (Plaintiff explaining that he can only walk for 10–15 minutes before his back gets tight and he needs to rest)), and Dr. Asad's similar conclusion that Plaintiff had "moderate limitations for squatting, kneeling, bending, walking, and standing for a long period of time" (Tr. 301). Instead, the ALJ highlighted Dr. Wells' and Dr. Tayab's assessments to find that the other contrary medical source opinions, including that of Plaintiff's treating orthopedic specialist, Dr. Faust, and the only other examining physician, Dr. Asad, were unpersuasive or only somewhat persuasive, even though they were more consistent with one another and the record. The ALJ's reliance on the state agency physicians thus constituted impermissible "cherry-picking" of opinions that supported the ALJ's own view.

19

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is vacated and this action is remanded for further consideration pursuant to the fourth sentence of 42 U.S.C. § 405(g).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 23, 2024
      Brooklyn, New York